**PAN AMERICAN COMPANY, Plaintiff–Appellant,**

**v.**

**SYCUAN BAND OF MISSION INDIANS, Defendant–Appellee.**

**No. 87–6738.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1989.

Decided Aug. 28, 1989.

As Amended Nov. 20, 1989.

Jon H. Epsten, Robert O. Lesher, Lesher & Borodkin, Tucson, Ariz., for plaintiff-appellant.

George Forman, Alexander & Karshmer, Berkeley, Cal., for defendant-appellee.

Before FARRIS, FERGUSON and BEEZER, Circuit Judges.

FERGUSON, Circuit Judge:

Plaintiff–Appellant Pan American Company (Pan Am) filed suit in district court challenging the validity of an amended bingo ordinance enacted by the Sycuan Band of Mission Indians (Band) which imposed licensure and work permit requirements on Pan Am's ongoing bingo operations. We affirm the district court's dismissal of Pan Am's complaint for jurisdictional defects based on failure to prove that the Band had waived tribal sovereign immunity.

I.

The Sycuan Band of Mission Indians, a federally recognized Indian tribe, occupies a reservation in San Diego County. In November 1985, the Band and Pan Am entered into a federally-approved Management Agreement ("Bingo Agreement") authorizing Pan Am to operate bingo games on the reservation. Under the terms of this Bingo Agreement, Pan Am agreed to construct and finance a Bingo facility on the Band's land, and then manage, operate, and maintain the Band's Tribal Bingo Enterprise ("Bingo Enterprise") exclusively for fifteen years. As compensation for its operation of the Bingo Enterprise, Pan Am received a percentage of the net operating profits from the bingo games. The Bingo Agreement also contained an arbitration clause for resolving disputes between the parties.

For a little more than a year, both the Band and Pan Am enjoyed the fruits of the Bingo Enterprise. For the Band, it provided needed revenue for tribal government operations and services, as well as creating employment opportunities for members of the reservation community. Pan Am, for its part, also received substantial financial benefits from its operation of the Bingo Enterprise. Relations between the Band and Pan Am became strained, however, in April 1987 when the Band's Tribal Council enacted an "Amended Ordinance Licensing and Permitting the Management of the Tribal Bingo Enterprise and Its Employees on the Sycuan Indian Reservation" (Amended Bingo Ordinance or Ordinance). Seeking to raise revenue for the support of tribal governmental services and protect the integrity of the Tribal Bingo Enterprise, the Amended Bingo Ordinance imposed licensure and work permit requirements on bingo game operators. For Pan Am, application and license fees under the Ordinance amounted to $80,000.

Pan Am deemed the Band's enactment of the Amended Bingo Ordinance to be a breach of the Bingo Agreement and commenced a two-prong attack on the Band's enforcement of the Ordinance. In addition to filing a demand for arbitration pursuant to the Bingo Agreement's arbitration clause, Pan Am also filed a breach of contract action in the district court.[1]

After an arbitrator dismissed Pan Am's claims as nonarbitrable in late August 1987, Pan Am filed an amended complaint in the district court seeking declaratory, injunctive, and monetary relief for the Band's enforcement of the Amended Bingo Ordinance which allegedly breached the Bingo Agreement and deprived Pan Am of statutorily protected rights under 25 U.S.C. §§ 81 and 1302. Rather than answering Pan Am's complaint, the Band filed a motion to dismiss for lack of personal and subject matter jurisdiction and failure to state a claim. *See* F.R.Civ.P. 12(b)(1), (2), and (6). The Band based its 12(b)(1) and (2) motion to dismiss for lack of jurisdiction on the ground that the Band, as a sovereign tribal entity, enjoyed immunity from suit which it had not waived. In the alternative, the Band asserted that Pan Am's complaint should be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim since the Ordinance was a valid exercise of the Band's sovereign authority, the enactment of which could not have constituted a breach of the Bingo Agreement.

By two-page order dated December 2, 1987, the district court dismissed Pan Am's breach of contract claim for lack of jurisdiction "because defendant Band has not expressly waived its sovereign immunity to unconsented suit." The court also ruled, as an alternative ground for dismissal, that Pan Am had failed to state a claim for breach of contract because the Band's

1. While Pan Am pursued its challenges to the Amended Bingo Ordinance, the parties agreed that Pan Am could receive a management license *pendente lite* upon payment of the disputed application and license fees ($80,000) to the registry of the district court. Pan Am paid the required fees and was subsequently issued a license. Pan Am continued to operate the tribal Bingo Enterprise until revocation of its management license by the Band in December 1987 over a dispute concerning attorney fees. The disposition of this $80,000 escrow account is the subject of a separate appeal. *See Pan American Co. v. Sycuan Band of Mission Indians,* No. 87–5783 (9th Cir. filed Feb. 17, 1988).

Amended Bingo Ordinance was a valid exercise of its sovereign authority "and thus ... [could not be] a breach of contract for which plaintiff [Pan Am] is entitled to damages or declaratory or injunctive relief." Finally, the court dismissed Pan Am's statutory causes of action for failure to state legally sufficient claims.

II.

We review *de novo* an order granting motions to dismiss. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986) (Rule 12(b)(1) dismissal for lack of subject matter jurisdiction); *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984) (Rule 12(b)(6) dismissal for failure to state a claim); *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 787 (9th Cir.1986) (same).

III.

Indian tribes have long been recognized as possessing common-law immunities from suit co-extensive with those enjoyed by other sovereign powers including the United States as a means of protecting tribal political autonomy and recognizing their tribal sovereignty which substantially predates our Constitution. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *United States v. Wheeler*, 435 U.S. 313, 322–23, 98 S.Ct. 1079, 1085–86, 55 L.Ed.2d 303 (1978); *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975); *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Kennerly v. United States*, 721 F.2d 1252, 1258 (9th Cir.1983); *Rehner v. Rice*, 678 F.2d 1340, 1351 (9th Cir.1982) (en banc), *rev'd on other grounds*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983); *see also* F. Cohen, *Handbook of Federal Indian Law* 324 (2d ed. 1982). Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants. *Santa Clara Pueblo*, 436 U.S. at 58–59, 98 S.Ct. at 1677; *Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 173, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977) (*Puyallup III*); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984); *United States v. Oregon*, 657 F.2d 1009, 1013 (9th Cir.1981); *California ex rel. California Dep't of Fish and Game v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979).

Thus, since the issue of tribal sovereign immunity is jurisdictional in nature, *Puyallup III*, 433 U.S. at 173, 97 S.Ct. at 2621; *USF & G*, 309 U.S. at 512, 60 S.Ct. at 656; *Chemehuevi Indian Tribe v. California State Bd. of Equalization*, 757 F.2d 1047, 1051 (9th Cir.), *rev'd in part on other grounds*, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985); *Big Spring v. United States Bureau of Indian Affairs*, 767 F.2d 614, 617 (9th Cir.1985), *cert. denied*, 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986), we must first determine whether the Band has effectively waived tribal immunity—thus making it amenable to suit in federal court—irrespective of the merits of Pan Am's tort and contractual claims.

Pan Am's waiver claim rests entirely on the Bingo Agreement's arbitration clause. Whether or to what extent this arbitration clause constituted a waiver of the Band's tribal sovereign immunity turns on the terms of that clause. *Santa Clara Pueblo* commands that waiver may only be found if the clause unequivocally and expressly indicates the Band's consent to waive its sovereign immunity. 436 U.S. at 59, 98 S.Ct. at 1677; *see also Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 773 (D.C.Cir.1986); *American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1377–78 (8th Cir.1985); *Snow*, 709 F.2d at 1321. The arbitration clause contained in Section VIII of the Bingo Agreement provides that

> [i]n the event a dispute arises between its parties ... either party may seek arbitration of said dispute and both parties do hereby subject themselves to the jurisdiction of the American Arbitration Association and do agree to be bound by and comply with its rules and regulations as promulgated from time to time.

Pan Am reads this clause as an explicit waiver of the Band's sovereign immunity since "a submission to arbitration is a submission to judicial jurisdiction ... as a matter of definition." Such a reading of the arbitration clause runs counter to not only the strong presumption against tribal waivers of immunity, but also generally accepted principles governing the interpretation of contractual arbitration provisions.

The Bingo Agreement's arbitration clause simply does not contain that unequivocal expression of tribal consent to suit necessary to effect a waiver of the Band's sovereign immunity. Absent an affirmative textual waiver in the terms of a contractual agreement or tribal constitution, federal courts have consistently declined to find tribal consent to federal jurisdiction. *Compare San Manuel Band,* 789 F.2d at 786 (tribal bingo agreement expressly "waive[d] sovereign immunity" for actions brought to enforce or interpret contract) *and Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.1980), *aff'd,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (tribal council passed formal resolution expressly waiving sovereign immunity) *and Fontenelle v. Omaha Tribe of Nebraska,* 430 F.2d 143, 147 (8th Cir. 1970) ("sue or be sued" clause in tribal corporate charter constituted waiver of sovereign immunity as to tribal corporation) *with Standing Rock,* 780 F.2d at 1380 (promissory note reserving "rights and remedies provided by law" in favor of lender, providing for attorney fees in the event of a collection action, and containing a conflict of laws provision did not constitute express waiver of promisee tribe's sovereign immunity) *and Chemehuevi,* 757 F.2d at 1053 (tribe's initiation of suit did not constitute consent to counterclaim) *and Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation,* 673 F.2d 315, 319–20 (10th Cir.1982) (tribal defendants did not expressly waive sovereign immunity of tribal authorities by agreeing to attorney fee clause in construction contract, consenting to partial summary judgment with respect to certain disputed sums owed under the contract, or including "sue or be sued" clause in tribal corporate charter).

Pan Am in essence asks this court to imply a waiver of tribal sovereign immunity from the text of the arbitration clause since this provision, Pan Am contends, would otherwise "merely be a trap for the unsuspecting" and leave Pan Am without judicially enforceable remedies for the Band's alleged breach of contract. Yet Indian sovereignty, like that of other sovereigns, is not a discretionary principle subject to the vagaries of the commercial bargaining process or the equities of a given situation. *USF & G,* 309 U.S. at 513, 60 S.Ct. at 656–57; *Chemehuevi,* 757 F.2d at 1052 n. 6 (sovereign immunity not "discretionary doctrine that may be applied as a remedy depending on the equities of a given situation"); *see also Standing Rock,* 780 F.2d at 1378–79; *Quechan Tribe,* 595 F.2d at 1155. Consent by implication, whatever its justification, still offends the clear mandate of *Santa Clara Pueblo.*

Our decision in *United States v. Oregon,* 657 F.2d 1009 (9th Cir.1981) in no way lessens the fundamental principle that tribal sovereign immunity remains intact unless surrendered in express and unequivocal terms. In *Oregon,* we held that the Yakima Indian Tribe of Washington had waived its immunity from federal jurisdiction by intervening as a party plaintiff and subsequently entering into a fishing conservation agreement which provided, among other things, that parties to the agreement would submit all future disputes to the Oregon district court for resolution. Relying on *Oregon,* two subsequent state court cases have interpreted contractual arbitration provisions as waiving tribal immunity. *See Native Village of Eyak v. GC Contractors,* 658 P.2d 756 (Alaska 1983); *Val/Del, Inc. v. Superior Court,* 145 Ariz. 558, 703 P.2d 502, *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 257 (1985).

The conservation agreement at issue in *Oregon* arose from a longstanding dispute between the United States government, several states in the Pacific Northwest, and the Yakima tribe, over fishing rights in the Columbia River Basin. In 1968, the United States initiated an action against Oregon to protect the treaty fishing rights of all Indian tribes in the Basin area; shortly thereafter, the Yakima tribe intervened as a party plaintiff. 657 F.2d at 1011. One year later, the district court entered judgment in favor of the United States (1) enjoining Oregon from enforcing certain fishing regulations, (2) establishing a procedure for promulgation of future state regulations, and (3) expressly retaining the court's jurisdiction to enforce the decree. *Id.* Several years later, the original parties to the suit and intervenors entered into the conservation agreement noted above. When suit was later brought against the Yakima tribe seeking to enjoin some of its fishing practices, the tribe invoked its sovereign immunity. *Id.* at 1012.

Unlike the intervenors in *Oregon,* however, the Band's participation in Pan Am's action can in no way be construed as consensual.[2] The Band has steadfastly denied the jurisdiction of both the arbitrator and the federal court to rule on the validity of the Amended Bingo Ordinance. In contrast, the Yakima Tribe's intervention into an ongoing federal suit constituted express consent in *Oregon* since, when entering into that action, the tribe explicitly agreed to be bound by whatever resolution ordered by the district court. *See* 657 F.2d at 1015–16. The Yakima tribe's waiver through the conservation agreement occurred, moreover, in the context of an ongoing legal dispute in which the tribe had *already* submitted to the jurisdiction of the district court—as an intervening party subject to the ongoing enforcement of the district court's original decree—before becoming a signatory to the agreement. The Band's position in this litigation can thus in no way be equated with that of the *Oregon* tribal intervenors.

While *Oregon* 's finding of waiver probably tests the outer limits of *Santa Clara Pueblo* 's admonition against implied waivers, *see Standing Rock,* 780 F.2d at 1380 (criticizing *Oregon* 's approach as "press[ing] the outer boundary" of the express waiver rule), several post-*Oregon* Ninth Circuit cases have reaffirmed the principle that tribal consent to suit must be unequivocally expressed. *See Chemehuevi,* 757 F.2d at 1052–53; *Snow,* 709 F.2d at 1321–22. Accordingly, we decline Pan Am's invitation to imply a waiver of sovereign immunity by the Band within the terms of the Bingo Agreement's arbitration clause.

IV.

Accordingly, in deference to *Santa Clara Pueblo* 's strong presumption against waivers of tribal sovereign immunity, we affirm the district court's dismissal of Pan Am's complaint as the Band did not effect a waiver of its tribal sovereign immunity by entering into the Bingo Agreement's arbitration clause.

AFFIRMED.

2. Pan Am contends that the Band submitted to the jurisdiction of the court by including materials outside the pleadings when it filed its 12(b) motion to dismiss. It is clear from the record that those materials were submitted solely to establish that the arbitration clause did not constitute a waiver of the Band's tribal sovereign immunity, and were not submitted on the merits of the controversy. Materials outside the pleadings which relate to jurisdiction can be considered on a motion to dismiss for lack of jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947); *Capitol Industries-EMI, Inc. v. Bennett,* 681 F.2d 1107, 1118 n. 29 (9th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). The Band did not submit to the jurisdiction of the court by including the materials.