**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RONALD OERTWICH,
       *Plaintiff-Appellant*,

       v.

TRADITIONAL VILLAGE OF
TOGIAK, AKA Community of
Togiak, AKA Native Village
of Togiak, AKA Traditional
Council of Togiak; JIMMY
COOPCHIAK; LEROY
NANALOOK; ANECIA KRITZ;
ESTHER THOMPSON; JOHN
NICK; WILLIE WASSILLIE;
HERBERT JR. LOCKUK;
WILLIE ECHUCK, JR.; CRAIG
LOGUSAK, in their individual
and official capacities; PAUL
MARKOFF; PETER LOCKUK,
SR.; BOBBY COOPCHIAK,
       *Defendants-Appellees*.

No. 19-36029

D.C.
No. 3:19-cv-00082-JWS

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted June 15, 2021
Anchorage, Alaska

Filed March 30, 2022

Before:  Johnnie B. Rawlinson, Morgan Christen, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Rawlinson;
Dissent by Judge R. Nelson

# SUMMARY[*]

## Tribal Sovereign Immunity

The panel affirmed in part and reversed in part the district court's dismissal, for lack of subject matter jurisdiction, of Ronald Oertwich's complaint against the Tribal Village of Togiak and various individual defendants.

Oertwich alleged that Tribe, its officers, and members improperly ordered his banishment based on his purported attempt to import alcohol into the City of Togiak, Alaska, and that, in the course of enforcing the banishment order, defendants detained Oertwich in the municipal jail and forced him to board an airplane destined for another city in Alaska.

Affirming in part, the panel held that tribal sovereign immunity deprived the district court of subject matter jurisdiction over Oertwich's claims alleged exclusively against the Tribe. The panel held that tribal sovereign immunity extends to Alaskan tribes even though they are organized as political entities rather than geographical areas or reservations. The panel held that, under controlling precedent, tribal sovereign immunity extends to tortious conduct occurring on non-tribal lands.

The panel also affirmed the district court's order dismissing claims against tribal judicial officers on judicial immunity grounds. The panel concluded that Oertwich failed to sufficiently allege that the tribal judges were not acting in

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

their judicial capacity or that the tribal court's orders were taken in the complete absence of all jurisdiction.

The panel reversed in part and remanded for the district court to fully consider (1) Oertwich's 42 U.S.C. § 1983 claims as to individual defendants in their individual capacities; (2) whether Oertwich is entitled to prospective injunctive relief against individual defendants; and (3) Oertwich's individual tort claims against the individual defendants.

The panel held that if Oertwich's § 1983 claim was asserted against individual defendants in their official capacities, they were entitled to sovereign immunity and the district court lacked jurisdiction to consider the claim. The panel remanded for the district court to analyze whether Oertwich fairly stated § 1983 claims against the individual defendants in their individual capacities and to consider whether Oertwich should be permitted to amend his complaint to clarify whether he alleges that individual defendants acted under color of state law.

The panel wrote that due to the district court's dismissal for lack of subject matter jurisdiction, it did not independently determine if Oertwich sufficiently alleged prospective injunctive relief available under *Ex parte Young*. As a result, the panel remanded to the district court to afford Oertwich the opportunity to amend his complaint to clarify whether he alleges prospective injunctive relief for threatened or ongoing unlawful conduct by a particular governmental officer.

The panel held that the district court erred in ruling that Oertwich was required to pursue his individual capacity

claims premised on violations of state law in tribal court. The panel remanded for the district court to consider whether any recovery for Oertwich's state tort claims will run against the individual tribal defendants themselves, and whether they therefore cannot enjoy tribal sovereign immunity.

Dissenting in part, Judge R. Nelson wrote that the majority erred in holding that Oertwich's complaint properly alleged a § 1983 claim against the individual defendants acting in their individual capacities under color of state law. He wrote that he would affirm the district court's dismissal of the § 1983 claim for failure to allege that the individual defendants acted under the color of state law.

## COUNSEL

David H. Tennant (argued), Law Office of David Tennant PLLC, Rochester, New York; Andy L. Pevehouse, Gilman & Associates LLC, Kenai, Alaska; for Plaintiff-Appellant.

Whitney A. Leonard (argued), Rebecca A. Patterson, Richard D. Monkman, and Nathaniel Amdur-Clark, Sonosky Chambers Sachse Miller Monkman LLP, Anchorage, Alaska, for Defendants-Appellees.

**OPINION**

RAWLINSON, Circuit Judge:

Ronald Oertwich (Oertwich) appeals the district court's order dismissing his complaint against Appellee Tribal Village of Togiak (the Tribe) and various individual defendants for lack of subject matter jurisdiction. Oertwich alleged that the Tribe, its officers, and members improperly ordered his banishment based on his purported attempt to import alcohol into the City of Togiak, Alaska, and that, in the course of enforcing the banishment order, defendants detained Oertwich in the municipal jail and forced him to board an airplane destined for another city in Alaska. Oertwich contends that the district court erred in holding that, because the Tribe and its officers were entitled to tribal sovereign immunity, the court lacked subject matter jurisdiction. Oertwich also maintains that the district court did not properly consider his individual capacity claims against the individual defendants, or his claims brought pursuant to 42 U.S.C. § 1983. Finally, Oertwich argues that he is entitled to prospective injunctive relief preventing enforcement of the banishment order. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we hold that tribal sovereign immunity deprived the district court of subject matter jurisdiction over Oertwich's claims alleged exclusively against the Tribe. We also affirm the district court's order dismissing claims against the tribal judicial officers on immunity grounds. However, we reverse and remand for the district court to fully consider (1) Oertwich's § 1983 claims as to individual defendants in their individual capacities; (2) whether Oertwich is entitled to prospective

injunctive relief against individual defendants; and (3) Oertwich's individual tort claims against the individual defendants.

## I. BACKGROUND

In his complaint, Oertwich alleged that he is a non-Native American, non-Native Alaskan who resided in Togiak, Alaska, for over thirty years, and operated the Airport Inn. According to his complaint, "[t]he Traditional Village of Togiak . . . is one of the 229 federally-recognized tribes in Alaska," and the State of Alaska participated in a Village Public Safety Officer (VPSO) Program, that "provide[d] limited public safety services to rural Alaska communities."[1] Oertwich alleged that the Traditional Village of Togiak "is an Alaska Native Tribe but is not a geographic subdivision of Alaska," and its "members primarily live in and around the City of Togiak, which is not Indian Country, as defined in 18 U.S.C. § 1151."[2] Oertwich alleged that "none of the events

---

[1] Oertwich's complaint named the State of Alaska as a defendant. The State moved to dismiss, and the district court granted that motion in a separate order that is not at issue in this appeal.

[2] Pursuant to 18 U.S.C. § 1151,

> the term "Indian country," as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have

relevant to this case occurred within Indian Country."

Oertwich alleged that, in January, 2017, VPSO Roger Wassillie informed Tribal Officer Leroy Nanalook that "a suspicious tote addressed to Oertwich . . . had arrived in Togiak via Everts Air Cargo." Officer Nanalook "opened the tote, which allegedly contained bottles of alcohol," and "seized the tote and [its] contents."

Oertwich further alleged that, on March 27, 2017, the Togiak Tribal Court issued an order banishing him from the Native Village of Togiak Tribe due to his "possession of prohibited controlled substances." Oertwich alleged that he was subsequently confronted by Officer Nanalook and Willie Echuck, Jr., who "escorted Oertwich to his home, where he had only a few minutes to gather some personal property," and placed him "onto a plane to Dillingham."

Oertwich returned to Togiak the following day. Officer Nanalook and VPSO Wassillie arrested Oertwich, "placed him in the back of a Togiak Tribal Police vehicle," "drove Oertwich to the City of Togiak jail," and "placed him in a locked jail cell." Oertwich alleged that VPSO Wassillie seized his personal property, and "Oertwich was held by force in the City of Togiak jail cell" until approximately April 3, 2017. According to Oertwich, "Willie Echuck Jr., Craig Logusak, and other [tribal] members acted as his jailors, restricting his access to food, his insulin, basic hygiene and communication." Oertwich further alleged that Officer Nanalook and individual defendants Jimmy Coopchiak, Herbert Lockuk Jr., Bobby Coopchiak, and Paul Markoff

---

not been extinguished, including rights-of-way running through the same.

"tackled Oertwich, pinned him down on the floor of the jail cell, cuffed his hands behind his back, and bound his legs with duct tape," "placed him in a Tribal Police vehicle, and drove him to the Togiak airport." Oertwich alleged that "at the Togiak airport, [Officer] Nanalook, Peter Lockuk Sr. and Paul Markoff carried Oertwich from the police car and put him onto a Grant Aviation airplane to Dillingham." Oertwich alleged that he has resided in Oregon after his banishment because he "believes he would be in danger if he attempted to reside in Togiak again."

Oertwich's complaint asserted the following causes of action against the Tribe, and its members and officials: Count I for *ultra vires* acts premised on the Tribe's lack of authority to arrest, detain, and banish him; Count II for violations of the Indian Civil Rights Act (ICRA) based on illegal search and seizure, arrest, imprisonment and banishment; Count III for violations of the Civil Rights Act due to the defendants' unconstitutional search and seizure, arrest, imprisonment, and banishment; Count IV for false imprisonment because the defendants allegedly lacked any "lawful basis to arrest Oertwich or confine him in the City of Togiak jail;" Count V for battery based on Oertwich's injuries from being tackled in the jail cell, bound, and forced onto an airplane; and Count VI for intentional infliction of emotional distress stemming from the unlawful arrest, imprisonment, and banishment.

The Tribe and the individual defendants filed a motion to dismiss Oertwich's claims based on: (1) tribal sovereign immunity from suit, (2) official immunity; (3) failure to exhaust tribal remedies; (4) Federal Tort Claims Act (FTCA) bar; (5) failure to sufficiently allege state action to support his § 1983 claim; and (6) lack of a private right under the ICRA.

The district court granted the Tribe's motion to dismiss. *See Oertwich v. Traditional Vill. of Togiak*, 413 F. Supp. 3d 963, 972 (D. Alaska 2019). Relying on *Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016), the district court held that dismissal of Oertwich's tort claims against the Tribe and its officers was warranted because tribal sovereign immunity generally bars tort claims against Indian tribes. *See* 413 F. Supp. 3d at 968. The district court "conclude[d] that all of [Oertwich's] claims against the Tribe and the individual defendants acting in their official capacities as officers and employees of the Tribe [were] barred by the doctrine of tribal sovereign immunity." *Id.* at 970.

The district court dismissed Count I of Oertwich's complaint to the extent the allegations of *ultra vires* acts were premised on the Tribe's banishment order, including actions taken by individuals in their official capacities to enforce that order. *See id.* at 970–71. The district court further reasoned that Oertwich's allegations regarding seizure of his personal property did not state a plausible claim "because the property seized was contraband not permitted in the dry village." *Id.* at 971. To the extent Count I related to actions taken by individual defendants in their individual capacities, the district court concluded that conduct was "subsumed in other Counts of the Complaint." *Id.* at 970.

The district court dismissed Count II alleging that VPSO Wassillie and Officer Nanalook violated the ICRA because that statute does not provide a private right of action. *See id.***[3]**

---

**[3]** *See Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 n.3 (9th Cir. 1991) (explaining that "[t]he Constitution's limitations on federal and state action does not restrain Indian tribes. The Indian Civil Rights Act does, but Congress has provided no private right

The district court further concluded that Oertwich was required to pursue this claim in tribal court. *See id.*

The district court dismissed Count III alleging that the tribal officers conducted an illegal search and seizure of Oertwich and his property, because Oertwich's complaint was "about actions taken under color of tribal law," and he failed to allege that "any act by the Tribe or tribal defendants was taken under color of state law" as required for a claim under § 1983. *Id.*

Although the district court concluded that Oertwich plausibly alleged in Count IV "a viable individual capacity claim" under state tort law that he was falsely imprisoned without tribal authorization, the district court held that Oertwich was required to pursue this claim in tribal court. *See id.*

The district court opined that the allegations in Count V "regarding the conduct of defendants Leroy Nanalook, Jimmy Coopchiak, Bobby Coopchiak, Herbert Lockuk, and Paul Markoff [was] not conduct that necessarily was required by the order to banish [Oertwich]," and that it was "plausible that banishment could have been achieved without resorting to the violent conduct alleged." *Id.* However, the district court held that Oertwich's battery claim could only be raised in tribal court. *See id.* at 972. It appears that the district court reasoned that these defendants' actions to enforce the banishment order were necessarily official capacity claims because they were taken in the course and scope of the defendants' duties on behalf of the Tribe. *See id.* at 971–72.

---

of action to enforce the Act, other than habeas corpus.") (citations omitted). Oertwich did not pursue habeas remedies.

Although the district court posited that "the allegations . . . regarding restrictions on [Oertwich's] access to food, medicine, hygiene, and communications state[d] a plausible individual capacity claim of intentional infliction of emotional distress," the district court also dismissed Count VI for Oertwich to pursue the claim in tribal court. *Id.*

The district court held that dismissal of Oertwich's claims against the tribal judges who issued the banishment order was warranted because the tribal judges were entitled to immunity for their judicial acts. *See id.*

The district court dismissed Oertwich's claims without prejudice so that Oertwich could pursue them in tribal court, but subsequently entered final judgment on October 15, 2019, in favor of "the Traditional Village of Togiak, Jimmy Coopchiak, Leroy Nanalook, Anecia Kritz, Esther Thompson, John Nick, Willie Wassillie, Herbert Lockuk Jr., William Echuck, Craig Logusak, Paul Markoff, Peter Lockuk Sr., and Bobby Coopchiak." Oertwich filed a timely notice of appeal, and we entered an order limiting the appeal to "the October 15, 2019 judgment only."[4]

## II. STANDARDS OF REVIEW

We review *de novo* the district court's dismissal of Oertwich's claims, "considering not just the complaint, but also the evidence submitted by the parties in connection with

---

[4] In the same order, we determined that the City of Togiak and Teodoro Pauk were not subject to this appeal because Oertwich did not properly file a notice of appeal for the separate judgments entered for these defendants. We also granted a motion to dismiss Roger Wassillie from any appeal.

the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Abcarian v. Levine*, 972 F.3d 1019, 1029 n.6 (9th Cir. 2020) (citation omitted).  We also review *de novo* the district court's dismissal of Oertwich's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1090 (9th Cir. 2021).  "Issues of tribal sovereign immunity are reviewed de novo."  *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020) (citation omitted).

## III.    DISCUSSION

### A.  The Tribe's Liability for Tort Claims and Tribal Sovereign Immunity

Oertwich contends that the district court erred in dismissing his claims against the Tribe and its officers because the United States Supreme Court has not extended tribal sovereign immunity to tortious conduct occurring on non-tribal lands.  In support of his contention, Oertwich argues that Alaskan tribes are permitted to exercise "less" sovereign authority than non-Alaskan tribes.

The Department of the Interior recognizes the Traditional Village of Togiak as a tribe.  *See* 85 Fed. Reg. 5462-01 (Jan. 20, 2020), 2020 WL 473053.  "As a matter of federal law, federal recognition of a tribe affords important rights and protections to Indian tribes, including limited sovereign immunity. . . ."  *Jamul Action Comm.*, 974 F.3d at 992 (citation and internal quotation marks omitted).  Tribal sovereign immunity protects tribes from suit absent congressional authorization or waiver.  *See, e.g.*, *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) ("[W]e have time and time again treated the doctrine of tribal

sovereign immunity as settled law and dismissed any suit against a tribe absent congressional authorization (or a waiver)") (citation, alteration, and internal quotation marks omitted); *Tohono O'odham Nation*, 818 F.3d at 563 n.8 ("We have held that tribal sovereign immunity bars tort claims against an Indian tribe, and that remains good law.") (citation omitted); *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008) ("Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe. . . .") (citation omitted). This immunity extends to Alaskan tribes even though they are organized as political entities rather than geographical areas or reservations. *See, e.g.*, *M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1081, 1084 (9th Cir. 2013) (recognizing that the Native Village of Kwinhagak, an Alaska Native tribe sharing "approximately the same geographic space" as the City of Quinhagak, enjoyed "sovereign immunity as an Indian tribe"); *cf. Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 403 P.3d 1172, 1176 (Alaska 2017) (applying tribal sovereign immunity in "a suit against an Alaska Native village when the village appear[s] on the U.S. Department of the Interior's list of federally recognized tribes and [the village] raise[s] tribal sovereign immunity as a defense") (footnote reference omitted).

The United States Supreme Court has repeatedly declined to abrogate tribal sovereign immunity through litigation, instead "defer[ring] to the role of Congress" to "alter its limits through explicit legislation." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 758–59 (1998) (declining to confine tribal sovereign immunity "to reservations or to noncommercial activities" absent express congressional action).

In *Bay Mills*, the Court addressed the State of Michigan's action against a tribe for opening a casino on non-tribal lands in violation of a gaming compact. *See* 572 U.S. at 785–86. The Supreme Court emphasized that "it is fundamentally Congress's job, not ours, to determine whether or how to limit tribal immunity. The special brand of sovereignty the tribes retain—both its nature and its extent—rests in the hands of Congress," and "[w]hatever our view of the merits . . . we defer to the role Congress may wish to exercise in this important judgment." *Id.* at 800 (citations and internal quotation marks omitted). Accordingly, a court must find that Congress has spoken "unequivocally" to rescind tribal sovereign immunity in a particular scenario, *id.* at 790, and a tribe only waives its immunity if it does so expressly. *See Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989), *as amended*. Critically, Oertwich has not alleged abrogation by Congress or express waiver by the Tribe.

Instead, Oertwich makes much of the fact that the alleged conduct was tortious and occurred on non-tribal lands. First, Oertwich overlooks his own concession that the Tribe is federally recognized and not a geographical subdivision of Alaska. Second, even if the tortious conduct occurred on non-tribal lands, Oertwich cannot overcome our broad holding in *Tohono O'odham Nation*. There, we held that the district court properly dismissed the plaintiffs' tort claims against a federally recognized tribe in Arizona for fraud in the inducement, material misrepresentation, and promissory estoppel on tribal sovereign immunity grounds. *See* 818 F.3d at 558, 562–63. In rejecting the plaintiffs' contentions that tribal sovereign immunity did not apply to tort claims, we explained that:

> We have held that tribal sovereign immunity
> bars tort claims against an Indian tribe, and
> that remains good law.  Furthermore, as the
> Supreme Court also noted in *Bay Mills*, it is
> fundamentally Congress's job, not the federal
> courts, to determine whether or how to limit
> tribal immunity.    The special brand of
> sovereignty the tribes retain—both its nature
> and its extent—rests in the hands of Congress.

*Id.* at 563 n.8 (citations and internal quotation marks
omitted); *see also Jamul Action Comm.*, 974 F.3d at 991
(articulating that "[t]ribal sovereign immunity extends to both
the governmental and commercial activities of a tribe,
whether undertaken on or off its reservation") (citations
omitted).  Oertwich fails to distinguish his case from this
controlling precedent.[5]

Consistent with these authorities, the district court
properly held that tribal sovereign immunity deprived it of
subject matter jurisdiction over Oertwich's claims alleged
exclusively against the Tribe.  *See Tohono O'odham Nation*,
818 F.3d at 563 n.8.

---

[5] In support of his assertion that the Tribe is not entitled to immunity
from tort claims, Oertwich relies heavily on a decision from the Alabama
Supreme Court, *Wilkes v. PCI Gaming Auth.*, 287 So. 3d 330 (Ala. 2017).
In that case, the Alabama Supreme Court held that "the doctrine of tribal
sovereign immunity affords no protection to tribes with regard to tort
claims asserted against them by non-tribe members." *Id.* at 335.  But the
Alabama Supreme Court cited to our decision in *Tohono O'odham Nation*,
and acknowledged that its "holding [wa]s contrary to the holdings of
several of the United States Courts of Appeals that have considered this
issue," and that "tribal immunity is a matter of federal law." *Id.* (citations
omitted).

## B. Claims Against the Tribal Judges and Judicial Immunity

Oertwich contends that the district court erred in holding that the tribal judges are entitled to judicial immunity because, he contends, the tribal judges exceeded their jurisdiction by ordering Oertwich's banishment.

The Togiak Tribal Court ordered Oertwich permanently banished from the Native Village of Togiak Tribe pursuant to Togiak Tribal Code Chapter 6-2-G.[6] The tribal court referred any criminal charges relating to Oertwich's "possession of controlled substances in [a] dry community and [his] possession of [a] stolen firearm" to Alaska state authorities. In a second order, the tribal court determined that Oertwich violated the banishment order and was "guilty of trespassing" when he returned "to the community via Twin Hills, Alaska and ATV." The tribal court ordered Oertwich "to vacate the community of Togiak," and "be escorted to the airport for immediate transportation out of Togiak."

"Tribal officials, like federal and state officials, can invoke personal immunity defenses. . . ." *Acres Bonusing,*

---

[6] Togiak Tribal Code Chapter 6-2-G provides:

Banishment: An Order of permanent or temporary banishment shall only be used to protect the Tribe and/or Tribal members from harm. Before banishments may be ordered, the person shall be given a Citation and a Notice to Appear in Tribal Court. A hearing shall be held that provides the person an opportunity to speak either in person or telephonically. The Togiak Tribal Court shall notify the surrounding villages when banishment orders are issued by the Court.

*Inc v. Marston*, 17 F.4th 901, 915 (9th Cir. 2021). "A long line of Supreme Court precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Id.* (citation and alteration omitted). "That immunity extends to tribal court judges: a tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges." *Id.* (citations, alteration, and internal quotation marks omitted). "Courts have articulated only two circumstances in which judicial immunity does not apply. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (citation and internal quotation marks omitted). "Whether an act by a judge is a judicial one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 915–16 (citation, alteration, and internal quotation marks omitted). "Because judicial immunity is an immunity from suit and not just from damages, it cannot be overcome by allegations of bad faith or malice." *Id.* (citation and internal quotation marks omitted).

We conclude that the tribal judges were entitled to judicial immunity in ordering the banishment of Oertwich from the Tribe's lands because Oertwich failed to sufficiently allege that the tribal judges were not acting in their "judicial capacity," or that the tribal court's orders were "taken in the complete absence of all jurisdiction." *Id.* at 915.

### C.  Oertwich's § 1983 Claim

Oertwich asserts that the district court erred by dismissing his § 1983 claim based on qualified immunity because he sufficiently alleged that the individual tribal officers violated his clearly established constitutional rights.  Oertwich's § 1983 claim sought relief for "violations of his civil rights under the United States Constitution."  He also asks for leave to amend his complaint to "demonstrate that the tribal officials operated under color of state law for purposes of Section 1983 liability."  However, Oertwich overlooks that before addressing qualified immunity, the threshold question is whether the district court had subject matter jurisdiction to address his § 1983 claim.  As we explain below, if his § 1983 claim was asserted against individual defendants in their official capacities, they were entitled to sovereign immunity and the court lacked jurisdiction to consider the claim.

The district court dismissed Oertwich's § 1983 claim against individual defendants in both their individual and official capacities.  When analyzing Oertwich's § 1983 claim as to defendants in their individual capacities, the district court first observed that Oertwich did "not allege that any act by the Tribe or tribal defendants was taken under color of state law." *Oertwich*, 413 F. Supp. 3d at 971.  But the court later observed that some of the conduct alleged was "not conduct that necessarily was required by the order to banish [Oertwich]" and "[Oertwich's] banishment could have been achieved without resorting to the violent conduct alleged." *Id.*[7]

---

[7] It is unclear from the district court's decision whether it concluded that Oertwich sufficiently alleged the denial of a federally conferred right. *See Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015) (explaining that

Oertwich's complaint is not a model of clarity and his allegations are difficult to decipher. But the complaint includes vague allegations that Officer Nanalook and VPSO Wassillie arrested Oertwich when he returned to Togiak from Dillingham following his banishment. And Oertwich alleged that he was later "held by force in the City of Togiak jail" where "his access to food, his insulin, basic hygiene and communication" was restricted. Our understanding is that VPSO Wassillie is no longer a defendant, but Officer Nanalook and the other defendants who allegedly held Oertwich in the City of Togiak jail are parties on appeal. We also conclude that Oertwich's complaint does sufficiently allege the denial of a federally guaranteed right to be free from unreasonable seizure, or possibly substantive due process for the deprivation of Oertwich's non-contraband property, when generously construed. Notably, the Tribe ordered Oertwich banished; it did not order him to be jailed or deprived of "food, his insulin, basic hygiene, and communication." That said, we agree with the district court that if Oertwich intended to allege a § 1983 claim against the Tribe or individuals acting in their official capacities, that claim is barred by tribal sovereign immunity.

The district court erred by dismissing Oertwich's entire § 1983 claim without first analyzing whether Oertwich alleged viable claims against the defendants in their individual capacities pursuant to § 1983. *See Jamul Action Comm.*, 974 F.3d at 994 (explaining that "[i]n suits for damages, the general rule is that individual officers are liable when sued in their individual capacities") (citation, alteration,

---

a plaintiff seeking relief under § 1983 must allege "that t[he]conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States") (citation omitted).

and internal quotation marks omitted).  "By its essential nature, an individual or personal capacity suit against an officer seeks to hold the officer personally liable for wrongful conduct taken *in the course of her official duties*."  *Pistor*, 791 F.3d at 1114 (citation omitted) (emphasis in the original). "As the officer *personally* is the target of the litigation, she may not claim sovereign immunity—and that is so regardless whether she was acting under color of tribal or of state law at the time of the wrongful conduct in question."  *Id.* (citation omitted) (emphasis in the original).  Accordingly, as to Oertwich's § 1983 claims, "[t]he question whether defendants were acting in their official capacities under color of state or under color of tribal law is wholly irrelevant to the tribal sovereign immunity analysis."  *Id.*

It is unclear from Oertwich's complaint and the current briefing whether Oertwich fairly stated § 1983 claims against the individual defendants in their individual capacities because Oertwich refers to the individual defendants as "officials," "tribal member[s]," and "volunteers."  We therefore remand for the district court to conduct this analysis in the first instance.

Oertwich also seeks leave to amend his § 1983 claim to allege that defendants acted pursuant to "state and tribal law enforcement."  In view of our precedent allowing for liberal amendment, the district court shall consider whether Oertwich should be permitted to amend his complaint to clarify whether he alleges that individual defendants acted under color of state law.  *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574–75 (9th Cir. 2020); *see also Pistor*, 791 F.3d at 1114–15 (explaining that "tribal defendants can . . . be held liable under § 1983 only if they were acting under color of *state*, not tribal, law") (emphasis in the original).

"Tribal sovereign immunity extends to tribal officers when the sovereign entity is the real, substantial party in interest." *Jamul Action Comm.*, 974 F.3d at 994 (citation and internal quotation marks omitted).  "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* (citations omitted). "That a suit implicates a tribal officer's official duties does not by itself establish that the tribe is the real party in interest." *Id.* (citation omitted).  "In suits for damages, the general rule is that individual officers are liable when sued in their individual capacities." *Id.* (citations, alteration, and internal quotation marks omitted).  "Suits that seek to recover funds from tribal coffers or establish vicarious liability of a tribe for damages, on the other hand, are barred by tribal sovereign immunity even when nominally styled as against individual officers." *Id.* (citation omitted).

In *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), addressing a negligence claim against a tribal employee, the Supreme Court emphasized that courts should consider individual capacity claims independent of tribal sovereign immunity. *See id.* at 1293. The Supreme Court held that "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." *Id.* at 1288. "That an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Id.*  Accordingly, a court "must determine in the first instance whether the remedy sought is truly against the sovereign. . . ." *Id.* at 1290 (citation omitted).  "An officer in an individual-capacity

action . . . may be able to assert *personal* immunity defenses. . . . But sovereign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* at 1291 (citations and internal quotation marks omitted) (emphasis in the original). "There is no reason to depart from these general rules in the context of tribal sovereign immunity. . . ." *Id.*

Following *Lewis*, we recently emphasized that "[t]he critical question is whether the *remedy sought* is truly against the sovereign." *Acres Bonusing*, 17 F.4th at 908 (citations and internal quotation marks omitted) (emphasis in the original). "Whether the remedy sought is one against the sovereign or the individual officer turns on the distinction between individual-and official-capacity suits." *Id.* (citation, alteration, and internal quotation marks omitted). "An official-capacity claim, although nominally against the official, in fact is against the official's office and thus the sovereign itself. . . ." *Id.* (citation and internal quotation marks omitted). "Suits against officials in their personal capacities . . . are different. In those cases, the plaintiff seeks to impose *individual* liability upon a government officer for actions taken under color of law. . . ." *Id.* at 909 (citation, alterations, and internal quotation marks omitted) (emphasis in the original). "[T]ribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties. . . ." *Id.* at 910 (citation omitted) (emphasis in the original).

Critically, "the tribal sovereign immunity inquiry thus does not revolve around whether issues pertaining to tribal governance would be touched on in the litigation. The question is whether any *remedy* will *operate* against the

sovereign.  Or as the Supreme Court put it, the critical inquiry is who may be legally bound by the court's adverse judgment. . . ."  *Id.* at 911 (citations, alterations, and internal quotation marks omitted) (emphases in the original).  "[W]here a plaintiff s[eeks] money damages not from the tribal treasury but from the tribal defendants personally, *given the limited relief sought*, the tribal defendants have not shown that the judgment would interfere with tribal administration."  *Id.* at 912 (citation, alterations, footnote reference, and internal quotation marks omitted).    As a result, tribal sovereign immunity does not extend to the individual defendants "merely because they were sued for conduct within the scope of their employment for the tribe."   *Id.* at 914 (citation omitted); *see also Pistor*, 791 F.3d at 1112 (articulating that "[a]lthough tribal sovereign immunity extends to tribal officials when acting in their *official* capacity and within the scope of their authority, tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties") (citations, alteration, and internal quotation marks omitted) (emphases in the original). We remand to the district court to conduct this requisite analysis in the first instance.

### D. Oertwich's Claims For Prospective Injunctive Relief

Oertwich contends that his prayer for prospective injunctive relief in Count I of his complaint was not barred by tribal sovereign immunity because the tribal officers were sued in their official capacities in accordance with *Ex parte Young*, 209 U.S. 123 (1908).

"Suits seeking prospective injunctive relief ordinarily may proceed against tribal officers sued in their official capacities under the doctrine of *Ex parte Young*." *Jamul Action Comm.*, 974 F.3d at 994 (citations omitted). "That doctrine permits actions for prospective non-monetary relief against state or tribal officials in their official capacity to enjoin them from violating federal law, without the presence of the immune State or tribe." *Id.* (citation omitted). "Declaratory relief may issue against tribal officers in the same circumstances." *Id.* (citation omitted). "For *Ex parte Young* to apply, a plaintiff must point to threatened or ongoing unlawful conduct by a particular governmental officer. . . ." *Id.* (citation omitted).

The district court did not extensively consider whether the tribal officials acting in their official capacities were subject to prospective injunctive relief as alleged in Count I of Oertwich's complaint, instead holding that "all of [Oertwich's] claims against the Tribe and the individual defendants acting in their official capacities as officers and employees of the Tribe [were] barred by the doctrine of tribal sovereign immunity." *Oertwich*, 413 F. Supp. 3d at 970. But Count I of Oertwich's complaint was premised on the "*[u]ltra vires* acts by the [Traditional Village of Togiak]" and its officials and members, and alleged that "[t]he arrest, detention and banishment of Oertwich were beyond any legal authority given to the [Tribe] by Congress."

Due to the district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court did not independently determine if Oertwich sufficiently alleged prospective injunctive relief available under *Ex parte Young*. As a result, we remand to the district court to afford Oertwich the opportunity to amend

his complaint to clarify whether he alleges prospective injunctive relief for "threatened or ongoing unlawful conduct by a particular governmental officer." *Jamul Action Comm.*, 974 F.3d at 994; *see also Solis*, 885 F.3d at 629.

### E. Oertwich's Other Individual Capacity Claims Against The Individual Tribal Defendants

Oertwich argues that the district court erred by holding that he was required to pursue his individual capacity claims premised on violations of state law in tribal court.

In his complaint, Oertwich alleged that the tribal officers and members were liable for false imprisonment, battery, and intentional infliction of emotional distress. Specifically, Oertwich alleged that, after he returned to the City of Togiak subsequent to the banishment proceedings: (1) he was imprisoned "by force" for six days at the City of Togiak jail; (2) "VPSO Wassillie seized the personal property Oertwich had returned to Togiak with," and "[n]one of that property ha[d] been returned"; (3) during his incarceration, Officer Nanalook "entered his home without permission and seized items of personal property"; (4) "Willie Echuck Jr., Craig Logusak and other [tribal] members acted as his jailors, restricting his access to food, his insulin, basic hygiene and communication"; (5) Officer Nanalook, Bobby Coopchiak, Jimmy Coopchiak, Paul Markoff, and Herbert Lockuk Jr. "tackled Oertwich, pinned him down on the floor of the jail cell, cuffed his hands behind his back, and bound his legs with duct tape"; and (6) Oertwich was transported to the airport, and "[Officer] Nanalook, Peter Lockuk Sr. and Paul Markoff carried Oertwich from the police car and put him onto a Grant Aviation airplane to Dillingham."

The district court determined that Oertwich alleged viable individual capacity claims:

> Viewed in the light favorable to [Oertwich] the actions taken may have been taken in the actors' individual[ ] capacities, for it appears that there was no tribal authorization for [Oertwich's] imprisonment. Count IV states a viable individual capacity claim. . . . The allegations . . . regarding the conduct of defendants Leroy Nanalook, Jimmy Coopchiak, Bobby Coopchiak, Herbert Lockuk, and Paul Markoff [was] not conduct that necessarily was required by the order to banish [Oertwich]. It is plausible that banishment could have been achieved without resorting to the violent conduct alleged. The battery claim in Count V may be pursued as an individual capacity claim . . . [And] the allegations . . . regarding restrictions on [Oertwich's] access to food, medicine, hygiene, and communications state a plausible individual capacity claim of intentional infliction of emotional distress.

*Oertwich*, 413 F. Supp. 3d at 971–72. The district court nonetheless concluded that Oertwich's only remedy for these claims was in tribal court. *See id.* This ruling was erroneous.

As we have explained, "[t]he critical question is 'whether the *remedy sought* is truly against the sovereign.'" *Acres Bonusing*, 17 F.4th at 908 (citations and internal quotation marks omitted) (emphasis in the original). Although the district court concluded that Oertwich alleged viable

individual-capacity tort claims, it failed to consider "in the first instance whether the remedy sought [wa]s truly against the sovereign." *Lewis*, 137 S. Ct. at 1290 (emphasizing that "courts may not simply rely on the characterization of the parties in the complaint") (citation omitted); *see also Pistor*, 791 F.3d at 1112 (articulating that "[a]lthough tribal sovereign immunity extends to tribal officials when acting in their *official* capacity and within the scope of their authority, tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties") (citations, alteration, and internal quotation marks omitted) (emphases in the original).  If the district court decides on remand that any recovery for Oertwich's state tort claims "will run against the individual tribal defendants" themselves, those defendants cannot "enjoy tribal sovereign immunity." *Acres Bonusing*, 17 F.4th at 910 (citations omitted).  Accordingly, we remand for the district court to conduct this threshold analysis in the first instance.

Generously construed, Oertwich's complaint includes allegations that the Tribe may have acted in conjunction with the federal government sufficient to overcome tribal sovereign immunity under the FTCA.  *See, e.g.*, *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1003 (9th Cir. 2014) (explaining that "Congress extended the FTCA's waiver of sovereign immunity to claims resulting from the performance of functions under a contract, grant agreement, or cooperative agreement authorized by the [Indian Self-Determination and Education Assistance Act]") (citation, alteration, and internal quotation marks omitted). Defendants concede that Oertwich could have pursued his tort claims against the United States pursuant to the FTCA,

but he failed to do so.  We decline to reach defendants' FTCA argument because the district court did not reach it.

## IV.     CONCLUSION

The district court properly held that dismissal of Oertwich's claims against the Tribe was warranted due to tribal sovereign immunity.  The district court also correctly dismissed Oertwich's claims against the tribal judges based on judicial immunity.

However, the district court erred in other respects.  We remand for the district court to consider:  (1) Oertwich's § 1983 claims against individual defendants in their individual capacities; (2) whether Oertwich is entitled to prospective injunctive relief against individual defendants under *Ex parte Young*; and (3) Oertwich's tort claims against the individual defendants as opposed to the Tribe.  We also direct the district court to consider whether Oertwich should be granted leave to amend to cure any pleading deficiencies related to his claims.[8],[9]

**AFFIRMED in part, and REVERSED and REMANDED in part for further proceedings consistent with this opinion.  Each party shall bear its costs on appeal.**

---

[8] We do not address the issues of tribal exhaustion or the timeliness of any amendments to Oertwich's complaint, as these issues were not fully developed on appeal.

[9] Because the case is being remanded for further proceedings, Appellant's Motion for Full Remand to Allow District Court to Consider Non-Record Material Submitted in Appellees' Supplemental Excerpt of Record, filed October 29, 2020, is denied as moot.

R. NELSON, Circuit Judge, dissenting in part:

The majority errs in holding that Oertwich's complaint properly alleges a § 1983 claim against the individual defendants acting in their individual capacities under the color of state law. In my view, the district court did not err in dismissing Oertwich's complaint for failure to allege the individual defendants acted under the color of state law. I would therefore affirm the district court's dismissal of Count III.

"To maintain an action under section 1983 against individual defendants, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pistor v. Garcia*, 791 F.3d 1104, 1114–15 (9th Cir. 2015) (cleaned up). A defendant has acted under color of state law where he has "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations omitted). It is "well-established . . . that a § 1983 claim cannot be maintained against defendants who act under color of tribal rather than state law." *Pistor*, 791 F.3d at 1115.

Count III of the complaint alleges a "violation of Civil Rights Act by [the Tribe] and its officials and members" because of "[t]he search and seizure of Oertwich's property and his subjection to [the Tribe's] tribal court jurisdiction, arrest, imprisonment and banishment." While the complaint can be generously read to allege that the individual defendants acted outside their tribal authority, such

allegations do not properly allege they acted under the color of state law.  Indeed, the complaint makes no reference to any individual defendant acting under the color of state law.  And the district court dismissed in separate orders, which were not appealed, all of the state defendants from the case.

Oertwich and the majority seem to recognize Oertwich's failure to properly allege actions under state law.  Indeed, Oertwich requests leave to amend his complaint as to Count III.  Why would Oertwich need to amend his complaint if he properly alleged that the individual defendants acted under color of state law?

The answer is far more simple than the majority suggests.  Oertwich needs leave to amend because he failed to allege any action taken under state law.  The district court, after a careful review of the complaint, so held.  Nothing suggests the district court erred in this regard.  Oertwich points to no allegation in his complaint that any individual defendant acted under color of state law.  And the majority identifies no such allegation either.

For these reasons, I would affirm the district court's dismissal of Count III.